# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| JOEL D. KURTENBACH, ) | |
| ) | Bankruptcy No.  18-01607 |
| Debtor. ) | |

## MEMORANDUM ORDER

This matter came before the Court at hearing in Cedar Rapids, Iowa on September 15, 2020.  Joseph A. Peiffer appeared for the Debtor, Joel D. Kurtenbach ("Debtor").  Thomas H. Burke appeared for Creditors, Farm Credit Services of America, PCA and Farm Credit Services of America, FLCA (collectively "Farm Credit").  Carol F. Dunbar appeared as the Chapter 12 Trustee ("Trustee").

## STATEMENT OF THE CASE

On July 17, 2020, Debtor filed his Fourth Amended Chapter 12 Plan for Reorganization ("Plan").  Under this Plan, Debtor proposed two alternative plans: Option A and Option B.  Under Option A, Debtor would undergo a traditional reorganization plan.  Under Option B, Debtor would liquidate his real estate and farm equipment.  While there was controversy regarding which option Debtor would move forward with, it was ultimately decided that Debtor would proceed solely under Option B.

A hearing was held on Debtor's Plan on September 15, 2020.  Prior to the hearing, Debtor and Farm Credit came to an agreement on many of the details of Debtor's liquidation under Option B.  One such detail concerned the sale of Debtor's real estate.  Under the agreement, Debtor is allowed to seek out a third party to purchase his real estate.  The terms of the third-party sale provision give Debtor until October 15, 2020 to produce a signed purchase agreement that Farm Credit deems acceptable.  In the event Debtor is unable to do so, the land will be auctioned at a date no later than December 8, 2020.  In the interim, Debtor's uncle, Donald Kurtenbach, has agreed to pay rent in the amount of $7,500 per week for Debtor's continued use of the farm equipment.  On November 2, 2020, the farm equipment will be picked up and transported for auction at a later date.

The only issue that the parties could not reach agreement on is who should be responsible for transporting the farm equipment to auction, and which auction service should be used to sell it.  Farm Credit believes the parties' security agreement ("Security Agreement") provides Farm Credit with the authority to determine who transports and hauls the equipment.  Thus, Farm Credit argues that its choice of hauler and auction service should control.  In particular, Farm Credit argues that MRK Transport should collect the equipment, and that BigIron Auction should be the service that sells it.  Debtor believes that he should be able to transport the equipment to auction and choose the service.  Debtor would employ

Hwy 64 Auctions.  At the hearing, both parties agreed that this Court should make this determination so that a final decision is in place that allows for the appropriate party to make plans and arrangements for the collection and disposition of the farm equipment.  However, neither party could identify controlling authority on the issue.

## CONCLUSIONS OF LAW AND DISCUSSION

The question presented here is whether Debtor or Farm Credit's preference for the collection and disposition of the farm equipment controls.  There is no bankruptcy law addressing this issue.  Thus, the Court will look to state law, and in particular, the Iowa Commercial Code to resolve this dispute.

A security agreement is a contract between a secured party and the debtor, which specifies what the security interest is.  First State Bank v. Shirley Ag Service, Inc., 417 N.W.2d 448. 452 (Iowa 1987).  Unless displaced by a particular provisions of the Iowa Commercial Code, general principles of law and equity are fully applicable to security agreements.  Iowa Code § 554.1103;  F.S. Credit Corp. v. Shear Elevator, Inc., 377 N.W.2d 227, 231 (Iowa 1985).  While the Security Agreement provides Farm Credit the authority to decide who collects and disposes of the farm equipment, the terms of the Security Agreement are subordinate to any provisions in the Iowa Code that dictate to the contrary.

The Court will begin by discussing which party's preference controls under the contract – which is the Security Agreement in this case. After making this determination, the Court will determine whether any provision of the Iowa Commercial Code prevents the terms of the Security Agreement from taking effect.

A.  **The Security Agreement**

On July 14, 2008, Debtor entered into the Security Agreement with Farm Credit. To secure Debtor's obligation to Farm Credit, Farm Credit was granted a security interest in: "All equipment, machinery… and removable structures used or useful in farming or ranching operations…" of Debtor. Farm Credit Ex. X, at 33. Under paragraph 10 of the Security Agreement, Debtor and Farm Credit agreed to the following provision for the event of Debtor's default:

> Secured Party may require Debtor(s) to assemble the Collateral and deliver it or **make it available to Secured Party** at a designated place which is reasonably convenient to both parties. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give reasonable notice of time and place of any public sale thereof…

Id. at 34. (Emphasis added).

By the terms of the Security Agreement, upon Debtor's default, Farm Credit had the ability to require Debtor to make Farm Credit's farm equipment collateral available so Farm Credit could take possession of it. In exercising its right to take possession, Farm Credit would have the right to transport the property. Therefore,

by the terms of the Security Agreement, Farm Credit's choice of who hauls the farm equipment to auction is controlling.

And while the Security Agreement does not explicitly grant Farm Credit the right to choose who auctions off the farm equipment, this right is implied by the terms of the agreement. Indeed, when conducting a public auction, Farm Credit's only obligation to Debtor is to give him "reasonable notice of time and place." Id. As a result, the choice of auction service will have already been made at the point of notice. Under normal circumstances, Farm Credit would be entitled to collect and dispose of the collateral, and as a result, its preference should control.

**B.    Iowa Code § 554.9610**

Upon default, a secured party may "sell…or otherwise dispose of any or all of the collateral…". Iowa Code § 554.9610(1). The only restriction is that: "Every aspect of a disposition of collateral…must be commercially reasonable." Iowa Code § 554.9610(2). At the hearing, John Jolly, who manages Farm Credit's bankruptcy cases for the surrounding states, testified that Farm Credit has a long history of using MRK Transportation and BigIron Auction for the collection and disposition of collateral. Jolly further testified that he believes these organizations have provided fair and commercially reasonable services to Farm Credit. Debtor did not present evidence or otherwise elicit testimony raising any concern that either of these companies would operate a commercially unreasonable manner.

As such, there are no provisions under the Iowa Commercial Code that would prevent the parties' previously agreed upon terms from taking effect.

This Court holds that MRK Transport shall be responsible for the transportation of all farm equipment. Accordingly, Debtor shall make all farm equipment ready and accessible for MRK Transport on November 2, 2020. Thereafter, BigIron Auction shall be responsible for the auctioning of all farm equipment.

**SO ORDERED**

Dated and Entered:

October 6, 2020

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE