IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )       Chapter 12
JOEL DONALD KURTENBACH,         )
                                )       Bankruptcy No. 18-01607
        Debtor                  )


## RULING ON DEBTOR'S OBJECTION TO APPLICATION FOR COMPENSATION

This matter came before the Court by telephonic hearing on November 3, 2020.  Thomas H. Burke appeared for creditor Farm Credit Services of America PCA and Farm Credit Services of America FCLA ("Farm Credit").  Joseph A. Peiffer and Austin J. Peiffer appeared for debtor Joel Donald Kurtenbach ("Debtor").  Carol F. Dunbar appeared as the Chapter 12 trustee ("Trustee").  Debtor requested and received oral permission to do post-hearing briefing.  All briefing has been received and the case is ready for decision.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF THE CASE

Counsel for Farm Credit filed an Application for Compensation ("Application") under 11 U.S.C. § 506(b) on October 2, 2020, seeking $219,447.67 in fees. (ECF Docs. 180, 182).  Debtor filed an initial objection on the

grounds that Farm Credit's Application lacked the detail necessary to determine whether the fees were reasonable. (ECF Doc. 194). On November 2, 2020, Farm Credit filed 343 pages of invoices in support of its Application. (ECF Doc. 224). Debtor then filed an Objection to Farm Credit's Application arguing that the fees sought were unreasonable. (ECF Doc. 225). Debtor's Counsel argues the fees should be significantly reduced. The Court agrees with Debtor and reduces the fees payable under § 506(b) accordingly.

## FACTUAL BACKGROUND

On November 26, 2018, Debtor filed this Chapter 12 bankruptcy. (ECF Doc. 1). Debtor is an Iowa farmer specializing in organic crops and cattle feeding operations. Farm Credit is Debtor's largest creditor with secured claims exceeding $2,000,000.00. This Chapter 12 case has been complicated. Debtor has proposed four different plans of reorganization. The first Chapter 12 plan was filed April 29, 2019. (ECF Doc. 58). Debtor's second Amended Plan was filed July 31, 2019. (ECF Doc. 92). The third Amended Plan was filed January 6, 2020. (ECF Doc. 126). Debtor's fourth and final plan was filed on July 17, 2020. (ECF Doc. 158). Farm Credit objected on feasibility grounds to each of the four plans. (ECF Docs. 76, 101, 131, 161). On October 30, 2020, a Final Amended Plan calling for the liquidation of Debtor's assets was confirmed by the Court. (ECF Doc. 211).

2

Debtor's proposed plans have been a bit out of the ordinary. The plans have all had different "options" depending on the occurrence of different circumstances. Farm Credit has objected to the form of the plans proposed, and to the different options they have provided. The various options, and the number of proposed plans has provided far more work than the ordinary Chapter 12 for both Farm Credit and Debtor's counsel.

The plan confirmation hearing was rescheduled several times. Farm Credit has requested fees for full preparation time for all of the hearing dates that were rescheduled. Counsel for Farm Credit's time entries appear to show that they saw each new plan proposed — and each rescheduled hearing — as necessitating a full new round of case preparation for a new hearing. Thus, the billing entries for Farm Credit's counsel include significant review and preparation time to reflect those beliefs.

The review of the bills is further complicated by the manner in which Farm Credit required counsel to bill this matter. It required counsel to allocate billing over five different Farm Credit loan files. Farm Credit, it should be noted, also initially resisted providing its detailed billing entries. It then asked for those detailed entries to be submitted under seal and with redactions. Farm Credit eventually relented under pressure from the parties and the Court and provided its fully detailed billings in the five-file format.

3

## PARTIES' ARGUMENTS

Farm Credit argues that all of its fees are reasonable given the complex and ever-changing nature of the case.  Farm Credit contends that Debtor's submission of four different plans, together with many difficulties in dealing with the Debtor himself, caused Farm Credit to expend a substantial amount of time and energy on this case.  Among other things, Farm Credit's attorneys argue that they were required to make an extensive review of feasibility for each new plan, required to review the different subject matters in each of the filed plans, required to run new financial projections for each new plan, and required to prepare new exhibits, objections, and expert witness opinions.

Debtor acknowledges that Farm Credit, an oversecured creditor with loan documents providing for attorney's fees, is entitled to reasonable attorney's fees under 11 U.S.C. § 506(b).  Debtor also acknowledges that this case has been unusual and produced far more work for Farm Credit than a normal Chapter 12.  However, after conducting an extensive analysis of the billing entries offered by Farm Credit, Debtor argues that Farm Credit dedicated more time and effort to this case than was reasonably necessary — even in these unusual circumstances.  Debtor asserts, for example, that while there were new plans proposed on several occasions, those plans did not provide brand new ideas for Farm Credit to consider.  The new plans were mostly variations of previous proposals.  Debtor does not

4

believe a brand new, full review and case preparation, was necessary for each new plan.

Debtor's Objection does not specify the exact time entries that are unreasonable. Debtor has not argued for a precise amount of fess that could be considered reasonable. Debtor has generally argued that there is just too much time billed, even for a case as unique as this. Debtor's counsel however, did respond to a question from this Court on what amount of fees would be reasonable. Debtor responded that Farm Credit's fees should not, under any circumstances, exceed those of Debtor's counsel. Debtor's counsel anticipates his firm's fees to be around $160,000.00.

The Court specifically notes that Debtor's counsel, and his firm's billing practices are very well known to the Court. The Court has reviewed and approved numerous fee applications from Debtor's counsel — in both large and small cases. The Court has previously recognized that Debtor's counsel is incredibly thorough, detail-oriented, and well-prepared. This has earned Debtor's counsel a stellar reputation in Chapter 12 cases, but that thorough approach pushes up the cost of his services. Debtor's counsel's fee requests are generally extensive, but have always been reasonable when reviewed by this Court. The Court makes these observations here because Debtor's counsel's fees provide at least a general benchmark for the amount and value of services required in this unusual case.

5

The Court is also very familiar with counsel for Farm Credit.  The law firm and its lawyers also have a reputation for excellence in this type of work.  The Court has, however, not reviewed a fee request like this from Farm Credit's counsel.  As noted, this review is made more difficult because of the unique posture of this case.  The Court notes that Farm Credit is the largest secured creditor in this case and has at all times been an oversecured creditor.  While the case has been complicated and unusual, Farm Credit is still only one creditor, which has represented only its continuously oversecured interest here.

## DISCUSSION

### I.    11 U.S.C. § 506(b)

Payment of attorney fees and costs to an oversecured creditor, like Farm Credit, is permitted by § 506(b) of the Bankruptcy Code, which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and **any reasonable fees**, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b) (emphasis added).  "To recover attorneys' fees, a creditor must establish that: (1) it is oversecured in excess of the fees requested; (2) the fees are reasonable; and (3) the agreement giving rise to the claim provides for attorneys' fees."  In re White, 260 B.R. 870, 880 (B.A.P. 8th Cir. 2001) (citing First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200, 201 (8th Cir.

6

1997)).  The parties agree that Farm Credit is an oversecured creditor as the value

of its collateral has always significantly exceeded the amount of its claim.  The

parties also agree that Farm Credit's loan documents provide for attorney's fees.

Thus, the only question presented for judicial resolution is whether the fees

requested are reasonable.

### A.  Reasonableness

At the outset, it should be noted that § 506(b) is not a blank check for

oversecured creditors to incur any amount of legal fees and have them paid by the

debtor.  In re Johnston, 2005 Bankr. LEXIS 1261, at*19 (Bankr. N.D. Iowa June

27, 2005).  Indeed, recovery of attorney fees under § 506(b) is expressly

conditioned upon a finding that the fees are "reasonable." 11 U.S.C. § 506(b).

"[C]ourts have broad discretion in reaching a conclusion that fulfills the purpose of

the **reasonableness element** found in [section] 506(b) which is: **to prevent**

**creditors from fail[ing] to exercise restraint** in the attorneys' fees and expenses

they incur, perhaps exhibiting **excessive caution**, overzealous advocacy and

hyperactive legal efforts." In re Jointly Administered: Fansteel, Inc., 2017 Bankr.

LEXIS 1265, at *8 (Bankr. S.D. Iowa May 9, 2017) (citations omitted) (emphasis

added).  The following are among the factors courts consider in determining

whether attorney fees are reasonable under § 506(b):

> the complexity of the case; the hourly rates charged and the rates in the
> locality;  whether  the  services  were  necessary  to  protect  the  client's

interest; whether attorneys were able to efficiently and competently provide the required services; whether billing judgement was exercised to avoid duplicate or unnecessary services; the results obtained; and the amounts charged in similar cases.

Id. (citations omitted).  All of these factors have some relevance here.  Several of the factors are particularly relevant to the Court's ultimate conclusion here.

### 1.   Complexity of the Case

Farm Credit argues that the complexity of the case, the number of amended plans, the unusual terms proposed, and the many difficulties of dealing with Debtor led to substantial fees and expenses.  Farm Credit notes that, from the time of the filing of the first proposed plan of reorganization, Debtor has offered two alternative plans: Option A and Option B.  Under Option A, Debtor would undergo a traditional reorganization plan.  Under Option B, Debtor would liquidate his real estate and farm equipment.  The Option A concept, the one in which Debtor could attempt to save his farm, involved varying degrees of crop methodologies: farming barrels, organic farming, cattle feeding, obtaining cattle contracts, et cetera.

Farm Credit asserts that it had serious concerns regarding prospects for reorganization throughout the case and under each new plan.  In particular, Farm Credit had serious doubts about the feasibility of each of the plans.  Given its status as an oversecured creditor,  Farm Credit acknowledged that filing a motion for relief from stay would be futile.  It eventually concluded its best option would be to resist confirmation, and pursue liquidation or dismissal.  Farm Credit challenged

each of the four plans on feasibility grounds.  In doing so, Farm Credit employed a

cattle expert, researched all issues, produced cash-flow projections, prepared

exhibits, witness lists, and objections to confirmation.  Farm Credit appears to

contend that this entire process of preparation was required to be repeated for each

of the four proposed plans.

Debtor concedes that "[t]his has been a complicated case, with numerous

plans and more than its fare share of twists [and] turns."  (ECF Doc. 234, at 7).

Complexity aside, however, Debtor contends that Farm Credit's fees are

unreasonable under the circumstances.  Debtor believes that while Farm Credit was

required to respond to four different proposed plans, these plans were not so

different as to require Farm Credit to start again each time from ground-zero.

Debtor argues that while the complexities required a significant amount of legal

work, Farm Credit was not entitled to make an unrestrained claim of fees in this

case.  Debtor's attorneys point out they were required to do far more work across

the whole case and all claims than Farm Credit's did — and Debtor's attorney fees

are still substantially lower than those requested by Farm Credit.

This Court recognizes the complexities of this case.  Between April 29, 2019

and July 17, 2020, Debtor proposed four different plans of reorganization.  Each

plan varied in some respect from its predecessors and therefore required additional

time and effort.  In the midst of it all, difficulties involving Debtor's participation

9

in the case and his cooperation with his attorney and the Court's requirements

created additional roadblocks.

The complexities of this case are real.  However, the Court agrees with

Debtor that this does not allow for fees to be billed without restraint.  The Court

also believes that the complexities may have caused some "excessive caution" in

the approach of Farm Credit's attorneys.  Section 506(b) is intended to check

claims for unrestrained billing and billing based on excessive caution. In re

Fansteel, Inc., 2017 Bankr. LEXIS 1265, at *8.

The Court also notes that the complexities have been endured by both

Debtor and Farm Credit.  Unlike Farm Credit, Debtor's counsel dealt with

complexities beyond Farm Credit and across the case to those presented by other

creditors of the estate.  Thus, the complexity of the case is an important factor to

consider and provides some support for Farm Credit's large fee claim.  It is not

however, dispositive on the issue of reasonableness of the fees requested.

## 2.  Hourly Rates

The hourly rates charged by Farm Credit are reasonable. They are quite a bit

below rates charged by Debtor's counsel here. Thus, this factor cuts entirely in

favor of Farm Credit.  The question presented here focuses on the amount of hours

billed.

### 3.   Necessity of the Work to Protect Farm Credit's Interests

In general terms, and subject to the discussion of other factors below, Farm Credit has shown its services were necessary.  Farm Credit had much at stake — protecting a $2,000,000.00 oversecured position.  In a very general sense, counsel for Farm Credit provided the types of services required to protect that large interest.  As noted below, however, there was a substantial duplication of effort and work repeated which, over the life of the case, became somewhat unnecessary for purposes of the § 506(b) analysis.  A further discussion on this point is provided under the factors related to efficiency and duplication.

There is one particular category of work the Court views as unnecessary as a whole: Farm Credit seeks to recover fees for services related to a motion for relief from stay.  At the November 3 hearing, counsel for Farm Credit acknowledged that it had determined early on that its status as an oversecured creditor likely foreclosed any chance of being awarded relief from stay.  As a consequence, Farm Credit instead began aggressively pursuing its ultimate goal of liquidation or dismissal.  Despite the early acknowledgement of that self-evident reality, counsel still billed and now seeks to recover over $6,000.00 for work on the abandoned motion for relief from stay.  In light of the proper determination that obtaining relief would be unlikely, the Court concludes that this work was not "necessary" to protect Farm Credit's interest.  Thus, those fees will be disallowed.

11

### 4.  Efficient and Competent Services

To be clear, there is no dispute about competency here.  Farm Credit's counsel are some of the very best attorneys to appear before this Court.  The only question under this factor is efficiency, and that is examined only for purposes of § 506(b).  A client receiving these services — like Farm Credit itself in this case — would have every right to consider these fee billings to reflect work done "efficiently" enough for its own purposes.  However, under § 506(b), the Court is looking at efficiency with an eye towards fairly preserving the value of the bankruptcy estate.  That includes imposing on creditors' counsel the requirement that they "**exercise restraint** in the attorneys' fees and expenses they incur." In re Fansteel, Inc., 2017 Bankr. LEXIS 1265, at *8 (emphasis added).

The record contains a variety of fee entries by Farm Credit's attorneys that they have not shown to meet the efficiency requirement of § 506(b) purposes.  Of particular concern for the Court here are the numerous billings related to objecting to each new plan and fully preparing for each rescheduled confirmation hearing. The Court acknowledges that there was need for some detailed preparation for plan confirmation proceedings.  However, the Court is concerned with the volume and repetitive nature of billing entries related to confirmation hearing preparation.

The first set of entries for a full preparation for a confirmation hearing are in May and June of 2019 — for hearing scheduled June 27, 2019. That full preparation occurred before the hearing was continued at the last minute.

The second set of entries for a full preparation for a confirmation hearing occurred in August of 2019. This was preparation on the Second Amended Plan, scheduled for September 3, 2019. Again, full preparation was done before the hearing was continued to September 27, 2019.

The third set of entries was for the weeks before the September 27, 2019 hearing. Another full hearing preparation appeared to be undertaken. That hearing again did not take place and was rescheduled.

The fourth set of entires began immediately starting September 30, 2019 — with entries for "final confirmation hearing." The entries continued throughout October and November — for the November 19, 2019 confirmation hearing on the second Amended Plan. Days before, the hearing was again rescheduled.

A fifth set of entries began immediately thereafter — reviewing the third Amended Plan — and preparing for confirmation hearing. These entries all occurred between November 18, 2019 and early February 2020. The hearing date identified in many entries was February 11, 2020 — but was only a preliminary hearing. Nevertheless, a substantial amount of fees were incurred for all aspects of preparation, as if it was a final, contested, evidentiary hearing.

A sixth set of entires began again immediately, on February 14, 2020, to prepare for the "final" hearing on March 24, 2020. Another full round of trial preparation occurred through February and into March. That hearing was rescheduled due to the outbreak of COVID-19.

A seventh set of entries for confirmation hearing preparation took place in April, May, June, and early July for the rescheduled final hearing. That hearing was rescheduled in early July — again after full preparation for hearing.

An eighth round of full preparation for a final confirmation hearing began in mid-July 2020, for the hearing rescheduled for September 15, 2020. The same types of in-depth preparation and billing again occurred from mid-July, August, and into mid-September. A scaled-down confirmation hearing eventually occurred September 15, 2020. It involved brief witness testimony on only a few areas of Option B — liquidation— and lasted less than two hours.

Even if the final confirmation had been fully-contested on every issue at a full evidentiary hearing, it would have lasted only a single full day. It was never scheduled for more than a single day. Nevertheless, each time Farm Credit's attorneys prepared (eight separate times), they did a full preparation. This included, each time, a completely new preparation of witness and exhibit lists, exhibits, witness preparation, outlines of testimony, preparation of memoranda of

authority, cash-flow analyses, and details on objections.  Many of these preparation

sessions also involved another round of substantial expert witness preparation.

In total, Farm Credit's attorneys billed over 450 hours of work related to

these confirmation hearings.  That is almost 10 weeks of time for what was to be,

at a most, a single full day hearing.  The time records for these periods are replete

with repeated entries such as:

> Continued work on objections and exhibits for Second Amended Plan
> hearing in Cedar Rapids; work on lengthy objections; preparation of
> exhibits and exhibit list; research and briefing on status of plan
> objections; feasibility and other objection. 2.60hrs.
>
> ****
>
> Work on preparation for hearing on preliminary hearing in Cedar
> Rapids on Third Amended Plan; work on Exhibit List, Witness List and
> Memorandum of Authorities; preparation for presentation. 2.70hr.

(ECF Doc. 230).

This pattern of repetitively billing large blocks of time for the same activities

pervades Farm Credit's invoices in a manner that cannot be reconciled fully with

the efficiency requirement of § 506(b).

A few examples help illustrate: between May 8, 2019 and September 4,

2020, Farm Credit's attorneys billed for preparing and reviewing witness and

exhibit lists more than 80 times.  While these entries also included tasks such as

"[c]ontinued work on objections and exhibits" and "review of additional

documentation," these entries account for more than 170 hours of billing across

this case. This type of billing practice is not confined to the preparation and review of witness and exhibit lists. Rather, the same pattern exists with regard to, among other things, researching and briefing feasibility objections, working on trial briefs and memoranda of authorities, and working on cash-flow analyses in preparation for the confirmation hearings.

In light of the foregoing, the Court concludes that much of the repeated preparation falls short of the efficiency requirements for compensation under § 506(b). The witness and exhibit lists were not ever-changing. In fact, the same basic issues were in dispute throughout much of the case. The question of feasibility changed some, but it was not radically different in any new proposed plan. Much of what had been done to prepare from earlier preparation periods should have been useful in later preparation, and eliminated the need for new and additional preparation. This is particularly true give the fact that the confirmation hearing never envisioned multiple days or a week of testimony. It was always a hearing envisioned for a few witnesses over a single full day. This factor — efficiency — cuts firmly in favor of some adjustment of and reduction to the allowable fees.

### 5. Billing Judgment and Duplicative Services

An additional factor to be considered is "whether billing judgment was exercised to avoid duplicate or unnecessary services." Id. "Billing judgment is

reflected in staffing a file in a manner that efficiently provides the most cost-

effective representation necessary to a client's interest without redundant,

duplicative, and unnecessary services." Id. at *15.  Billing judgment, in this

Court's view, also includes a final review of the bills to ensure they meet the

requirements of § 506(b) — which include avoiding duplication.  This requires the

disallowance of certain entries that, in the context of a normal billing setting (*i.e.*,

outside of the § 506(b) analysis), may very well be perfectly acceptable to a client

that wanted its lawyers to use excessive caution.

Having reviewed Farm Credit's invoices — spread over the five loan files

for this one bankruptcy — and the corresponding breakouts provided by Debtor, it

appears that a substantial duplication of efforts has occurred in this case.  For

example, Farm Credit's invoices list 66.1 hours in billing entries involving

multiple Farm Credit attorneys billing for reading, reviewing, drafting, and

revising the same motions and documents, sometimes multiple times.  (ECF Doc.

230).  At the hourly rate of $300.00, these duplicative billings account for

$19,830.00.  Farm Credit has provided insufficient explanation to show these

billings are not duplicative.

To be clear, this Court is not suggesting that any and all work the Court now

categorizes as duplicative is without value.  To the contrary, the Court understands

that the process of proofreading and reworking is an important aspect of diligent

lawyering.  Nevertheless, the question is not whether diligent lawyering has

occurred, it is whether that level of diligence is reasonable under § 506(b) given

the circumstances and therefore compensable out of the estate property.  Here,

there is insufficient evidence from which the Court can conclude that Farm Credit

exercised billing judgment to eliminate, or even minimize the expense of these

duplicative efforts.

As referenced above, additional difficulties arise from the fact that Farm

Credit had its attorneys bill across five different Farm Services accounts — for

work on a single Chapter 12 case.  It has made review of the reasonableness of

particular billings extremely difficult.  The entries for the total billings for each

month are found in five different sets of billing entries.  To determine the total bill

and total time, the Court was required to add the billings of the five files together.

The Court 's extensive review of all entries — in all five sets of bills — reveals

that many times the exact same entries for the same date and in the same amount of

time, are found in more than one of the five billing files for that date.  Sometimes

those identical billings appear in all five of the files for the same time on the same

day.

The Court has complied a list of all the duplicate entries, the number of files

on which they were made, the time increment, and the resulting billing across all

files. (Exh. 1).  There are a large number of examples of multiple file-billing for

the exact same entry.  All added together, the difference between the cost of billing that entry in one file and billing that identical entry in multiple places is not insignificant.  As Exhibit 1 shows, the amount of difference is 335.7 hours.

The Court had little or no guidance in determining if the billing of the identical entry to more than one file was fully warranted or instead was entirely duplicative and excessive.  The Court was left to make its own judgment about whether the multiple-file entry was a fair allocation of reasonable time spread over multiple client files, or whether it was an improper multiplication of an otherwise reasonable single time entry.

Given the lack of guidance on this, the Court can only conclude that a portion of the time in those entries appears to have been improperly multiplied by including it in several files.  This occurred with particular regularity with some of the trial preparation entries.  The Court believes this provides another reason for reduction of the fees under the reasonableness standards of § 506(b).

The substantial duplication of billing entries was not mitigated by the proper exercise of billing judgment.  There was no effort to eliminate either the duplicate entry or explain the confusion surrounding it.  At a minimum, Farm Credit failed entirely to prove that the identical entries spread over the different files were all reasonable.  Thus, this factor — avoiding duplication — requires a substantial adjustment to the time billed.

### 6.   Results Obtained

Farm Credit's counsel has sufficiently shown that it obtained excellent results for Farm Credit.  It appears to have preserved its oversecured position and actually seeks fees from the oversecured portion.  It should be noted, however, Farm Credit made no showing that its positions — or arguments — preserved estate property in any meaningful way.

### 7.   Amounts Charged in Similar Cases

Farm Credit has not identified any similar case where similar amounts were charged.  Admittedly, this is a unique case. The only charges in a similar case — are those by Debtor's counsel here.  As noted above, the Debtor's total fees are anticipated to be around $160,000.00.  This factor warrants some adjustment of the Farm Credit fee application.  The amounts subtracted from Farm Credit's billings bring the total fees for its attorneys into a similar range.

### B.   Analysis of Factors Effecting Reasonableness of Fees

As noted above, the factors relevant to determining reasonableness of fees under § 506(b) cut both ways in this case.  The Court finds that these factors thus favor some reduction of the allowable fees in this case.  Having conducted an in-depth review of the record and, in light of the circumstances of this case, the Court concludes that a 30% reduction in the total fees requested is appropriate.  See In re Woods Auto Gallery, 379 B.R. 875, 892 (Bankr. W.D. Mo. 2007) (Court has

20

discretion to disallow or reduce fees even if the disallowance or reduction appears subjective or uncertain). Thus, the Court hereby finds that the allowable, reasonable attorney fees of Farm Credit under § 506(b) is $153,613.37. Such a reduction fulfills the purpose of the reasonableness requirement of § 506(b) and more accurately reflects the fees which are compensable by the estate.

## CONCLUSION

The Court finds that Farm Credit has failed to meet its burden of establishing that the full amount requested is reasonable under § 506(b). The Court reduces the fees compensable under § 506(b) to $153,613.37.

IT IS HEREBY ORDERED THAT:

1. The Objection is granted in part and denied in part.

2. Fees in the amount of $153,613.37 are allowed as reasonable under § 506(b).

3. Fees in the amount of $65,834.40 are denied.

Dated and Entered:

November 30, 2020

Thad J. Collins
Chief Bankruptcy Judge