# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 12 |
| JOEL DONALD KURTENBACH, ) | |
| ) | Bankruptcy No. 18-01607 |
| Debtor. ) | |

## RULING ON MOTION FOR SANCTIONS

This matter came before the Court by telephonic hearing on April 22, 2021. Peter C. Riley appeared for Debtor Joel D. Kurtenbach ("Debtor"). Thomas H. Burke appeared for Creditors Farm Credit Services of America, PCA and Farm Credit Services of America, FLCA (collectively "Farm Credit"). The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## STATEMENT OF THE CASE

Farm Credit seeks to impose monetary sanctions against the Debtor in an amount equal to all of Farm Credit's legal fees and expenses in connection with responding to and resisting the Debtor's Rule 60(b) Motion to Vacate. Farm Credit cites to 11 U.S.C. § 105 and the Court's inherent authority and argues that sanctions are appropriate because the Debtor's Motion was frivolous. Debtor disputes Farm Credit's categorizing the Motion as frivolous and argues that there is

no basis to award sanctions. For the reasons that follow, Farm Credit's Motion for Sanctions is granted, but the amount requested is reduced.

## BACKGROUND

Debtor filed for Chapter 12 relief on November 26, 2018. (ECF Doc. 1). Debtor filed his Final Amended Chapter 12 Plan of Liquidation ("Plan") on October 6, 2020. (ECF Doc. 186). The Plan was confirmed on October 30, 2020. (ECF Docs. 211). Paragraph 3.4 of the Plan provided details for the sale of substantially all of the Debtor's real property, and directed the proceeds to be applied towards Debtor's mortgage creditors, Farm Credit and High Point Farms, Inc. ("High Point"):

> Debtor has listed the property . . . with Peoples Company of DeWitt, Iowa. Peoples Company will seek to sell the property through October 23, 2020 for an amount sufficient to retire the debt owed to [Farm Credit]. If non-contingent offers to retire the debt owed to [Farm Credit] have not been received by October 23, 2020, Peoples Company will prepare to sell the property securing the debt owed to [Farm Credit] . . . via auction . . . .

(ECF Doc. 186 ¶ 3.4 at 7–8). The Confirmation Order authorized the Trustee to move the Court to accept offers which were acceptable to Farm Credit and High Point, but which the Debtor rejected:

> If Debtor refuses to sign and accept a purchase offer approved by [Farm Credit] and [High Point], within 24 hours or refuses to sign and accept a purchase offer approved by [Farm Credit] and [High Point], procured through the anticipated auction . . . when presented to him the Chapter 12 Trustee is authorized to sign and accept any offers on his behalf so they can be presented to the Court.

2

(ECF Doc. 211 ¶ 4 at 3).

Dillon Streets ("Mr. Streets") offered to purchase three of the seven parcels on November 15, 2020.  (ECF Docs. 235 at Ex. "A"; 236 at Ex. "A"; 237 at Ex. "A").  The offers were presented to Farm Credit, High Point, and the Debtor.  Farm Credit and High Point accepted.  The Debtor rejected.  (ECF Docs. 235 at Ex. "B"; 236 at Ex. "B"; 237 at Ex. "B").

Trustee moved the Court to approve the proposed sale pursuant to the Plan and Confirmation Order.  (ECF Docs. 235–37).  Objections were filed by the Debtor, the Debtor's mother, and William Ballou.  (ECF Docs. 247, 248, 255–57).  The Court set the matter for hearing on December 15, 2020.  One day before the hearing, Levi Larkey ("Mr. Larkey") offered to purchase all seven parcels for $3,400,000.00.  On the day of the hearing, Mr. Streets offered to purchase all seven parcels for $3,450,000.00.  The Trustee orally amended her sale motions at the hearing to reflect the new offers.  Again, Farm Credit and High Point accepted, and the Debtor rejected, the new offer.

The Court received testimony from the Debtor and Doug Yegge of Peoples Company—the broker engaged to list and sell the parcels ("Mr. Yegge").  Debtor requested a public auction.  He argued that the seven parcels could bring in as much as $4,400,000.00 if advertised in the organics market, that additional parties were interested, and that more time was needed to gather the requisite funding.  He

3

also testified that he preferred Mr. Larkey's offer as it would allow him and his mother to remain on the farm.

Mr. Yegge then testified that he valued the seven parcels at $3,332,000.00. He based his valuation on the highly-erodible nature of the land. He stated that the only crop which could successfully be grown on the farm was hay, and that the most likely buyer would therefore be a local farmer engaged in conventional farming techniques. Mr. Yegge testified that he had conducted over 100 farm auctions in his career, and that holding a public auction during the COVID-19 pandemic would be exceedingly difficult. He believed Mr. Larkey's and Mr. Streets' offers were strong and stated that he would be willing to conduct an informal auction between the two bidders.

Farm Credit and the Trustee supported the informal auction. The Debtor insisted that a public auction be held. High Point stated that it had no particular preference between an informal auction and a later public auction, and that it would defer to the Court's decision. The Court ultimately ordered Mr. Yegge to conduct an informal auction between Mr. Larkey and Mr. Streets on recess. The auction resulted in a sale to Mr. Streets of all seven parcels for $3,470,000.00 with closing to occur no later than February 15, 2021. The sale also included an oral agreement to allow the Debtor to remain on the farm for $600.00 per month for

approximately one year.  The Court accepted the results and granted the Trustee's Motions to Sell.  (ECF Doc. 262).

Three days before the scheduled closing, Debtor filed his Rule 60(b) Motion to Vacate the Court's order granting the Motion to Sell.  (ECF Doc. 270).  Debtor's Motion argued that the Court should set aside the sale because a higher bidder could have been produced.  Debtor asserted that he believed Mr. Yegge was representing him in the sale of the farmland, and that no additional offers would be submitted at the hearing.  The Motion further asserted the Debtor's belief that Mr. Yegge had wrongfully communicated confidential information to Mr. Streets about Mr. Larkey's available credit, which enabled Mr. Streets to make a slightly higher offer than Mr. Larkey at the auction.

The Court set the matter for hearing.  Farm Credit objected on the grounds that the circumstances of the sale did not satisfy the requirements of Rule 60(b), that the sale price was adequate, and that the Motion was untimely. (ECF Doc. 272).  The Trustee joined in Farm Credit's objection.  (ECF Doc. 273).  Less than 45 minutes before the hearing, Debtor withdrew his Motion.  (ECF Doc. 275).

Farm Credit then filed this Motion for Sanctions.  (ECF Doc. 284).  The Motion seeks monetary sanctions of $16,470.00, which reflects all of the legal fees and expenses incurred in responding to the Debtor's Motion to Vacate.  Farm

Credit cites to 11 U.S.C. § 105 and the Court's inherent authority and argues that sanctions are appropriate because the Debtor's Motion was frivolous.

Debtor disputes Farm Credit's categorizing the Motion as frivolous. Debtor asserts that Mr. Yegge's alleged disloyalties in communicating Mr. Larkey's credit cap presented "exceptional circumstances" for purposes of Rule 60(b) relief. Debtor further asserts that he did not bring the Motion to Vacate until after he had identified a new bidder who was ready, willing, and able to make a higher offer, and that the Motion was withdrawn only after it was determined that Farm Credit—who was also the new bidder's financier—would not support the new bid. Debtor thus maintains that his actions were appropriate under the circumstances and that there is no basis for sanctions.

## DISCUSSION

### I. Sanctions Standards

Federal courts are vested with the inherent authority to sanction bad faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32 (1991). Section 105(a) of the Bankruptcy Code formally imbues the bankruptcy courts with that inherent power. Casamatta v. Resurgent Cap. Servs., L.P. (In re Freeman-Clay), 578 B.R. 423, 436 (Bankr. W.D. Mo. 2017) ("The Court holds, as others have, that [section] 105 intended to imbue the bankruptcy courts with the inherent power to sanction **bad faith** conduct as recognized by the Supreme Court in Chambers.") (emphasis in

6

original); Karsch v. LaBarge (In re Clark), 223 F.3d 859, 864 (8th Cir. 2000) (citations omitted) (Section 105(a) "has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process," which includes the power to sanction.). That section provides:

> **The court may issue any order, process, or judgment that is necessary or appropriate** to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude a court from, sua sponte, taking any action or making any determination necessary or appropriate to **enforce or implement court order or rules, or to prevent an abuse of process**.

11 U.S.C. § 105(a) (emphasis added).

"The Court has immense discretion when it comes to issuing sanctions." In re Wall, 2019 Bankr. LEXIS 353, at *4 (Bankr. N.D. Iowa Feb. 8, 2019). Of course, this authority is not unlimited. "Before imposing sanctions under . . . [section] 105, a bankruptcy court must make an explicit finding of bad faith or willful misconduct." In re Freeman-Clay, 578 B.R. at 435. In other words, Debtor's conduct must have been

> (1) entirely without color, and (2) motivated by improper purposes. Conduct is entirely without color when it lacks any legal or factual basis . . . [A] finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings.

Id. (quoting Wolters Kluwer Fin. Servs. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009))

7

The conduct at issue is the Debtor's filing and eleventh-hour withdrawal of his Rule 60(b) Motion to Vacate. Determining whether this conduct rises to the above-mentioned standards requires the Court to assess the propriety of the Motion and the circumstances surrounding its withdrawal.

**A. Debtor's Rule 60(b) Motion to Vacate**

Rule 9024 of the Federal Rules of Bankruptcy Procedure makes Rule 60(b) of the Federal Rules of Civil Procedure applicable in bankruptcy proceedings. Fed. R. Bankr. P. 9024. Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

It is difficult to pin down which of these grounds the Debtor relied upon in bringing his Motion, as no particular subsection was referenced. Furthermore, with exception to the perceived disloyalties argument, Debtor merely reasserted his prior resistance to the Sale Order—in essence, that the property could have been

8

sold for more to a buyer who would allow him to remain on the farm. He did not set forth any clear error on the Court's part, nor did he present any additional evidence or legal precedent which was unavailable to him at the time of the hearing. By process of elimination then, the only conceivable grounds for relief would have been under subsection (b)(3) or the catch-all provision of subsection (b)(6).

To prevail under Rule 60(b)(3) however, "the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that **prevented the movant from fully and fairly presenting its case**." Jacobs v. Johnson Storage & Moving Co. Holding, 2021 U.S. Dist. LEXIS 39814, at *9 (E.D. Mo. Mar. 3, 2021) (emphasis added) (quoting Atkinson v. Prudential Prop. Co., 43 F.3d 367, 372–73 (8th Cir. 1994)). As an initial matter, the Court is not convinced that any "fraud, misrepresentation, or misconduct" occurred. Debtor's perceived disloyalties argument is based, in large part, upon Mr. Yegge's alleged communications with Mr. Streets concerning Mr. Larkey's credit cap. Yet, the only evidence offered in support of the actual happening of these communications is their supposed discovery by the Debtor's brother shortly after the auction. The Court has no evidence supporting the credibility of these claims or whether they actually occurred.

Even if these communications did in fact occur and rise to the level of "fraud, misrepresentation, or misconduct," there is no evidence suggesting how or why their happening prevented the Debtor from fully and fairly presenting his case. In fact, the record supports the contrary. The parties were given notice and, with exception of High Point who appeared telephonically, all were present at the hearing on the Trustee's Motions to Sell. The parties were given ample opportunity to gather and present the most competitive offers available. The Court entertained testimony supporting and resisting the competing offers before ordering an informal auction be conducted. The Court received the results of that auction and **again** entertained testimony supporting and resisting the sale. No debate—let alone mention—of any perceived unfairness occurred. The Debtor was given a full and fair opportunity to present his case—not once, but twice.

Thus, the only remaining ground for relief would have been under the catch-all provision of subsection (b)(6), which requires a showing of "exceptional" or "extraordinary circumstances." Gonzalez v. Crosby, 545 U.S. 524, 538 (2005); Woodcock v. United States, 315 B.R. 487, 500 (Bankr. W.D. Mo. 2004); Unsecured Creditors' Comm. v. Pelofsky (In re Thermadyne Holdings Corp.), 283 B.R. 749, 759 (B.A.P. 8th Cir. 2002); De Wit v. Firstar Corp., 904 F. Supp. 1476, 1496 (N.D. Iowa 1995); Nucor Corp. v. Nebraska Pub. Power Dist., 999 F.2d 372, 374 (8th Cir. 1993). Among the factors considered in determining whether

"extraordinary circumstances" exist are "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." Buck v. Davis, 137 S. Ct. 759, 778 (2017) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–864 (1988). The Court is on firm ground in concluding that the circumstances of this case present no such risks.

Debtor's Plan contemplated the liquidation of his farmland. The Plan and Confirmation Order authorized the Trustee to move the Court to accept offers which the Debtor rejected but otherwise satisfied Farm Credit and High Point. That is exactly what happened here—and the matter was **fully adjudicated**. At the end of the day, the only acceptable offers were from Mr. Larkey and Mr. Streets, and both offers exceeded the only credible valuation of the farmland. Mr. Streets had the financial wherewithal to outbid Mr. Larkey at auction. The terms of Mr. Streets' bid were acceptable to both Farm Credit and High Point. On recommendation of the Trustee and in full consideration of the record, the Court approved the sale.

Nothing with respect to the circumstances surrounding the auction, the Sale Order, or the terms therein demonstrate "extraordinary circumstances" warranting relief under subsection 60(b)(6). There was thus no legal or factual basis for the Debtor seeking relief under Rule 60(b), and the Court finds that the Debtor's

11

Case 18-01607    Doc 337    Filed 09/30/21    Entered 09/30/21 14:02:38    Desc Main
Document      Page 12 of 14

conduct in bringing the Motion was entirely without color of law.  In re Freeman-Clay, 578 B.R. at 436.

### B. Withdrawal of the Motion

The Court must also consider the effect of the Debtor's Motion and its eleventh-hour withdrawal.  Debtor filed the Motion to Vacate three days before closing and attempted to stall proceedings under the suggestion of Mr. Yegge's alleged disloyalty.  Debtor's Motion was little more than a request for a "do-over"—which the Eighth Circuit Court of Appeals has consistently rejected as an improper second bite at the apple.  In re Knotts, 409 B.R. 501, 502 (Bankr. E.D. Mo. 2009) (citing De Wit, 904 F. Supp. at 1495–96)).  That is, Debtor appears to have used this perceived disloyalties argument to undue the Sale Order at the last minute with a new offer under terms he preferred.

If Debtor truly believed he was aggrieved and that the possibility of relief existed under Rule 60(b), he would have continued to pursue his Motion despite the absence of a new offer.  Instead, Debtor withdrew his Motion when he realized Farm Credit—the party seeking payment vis-à-vis the Sale Order—would not support financing the new bid.  The Court believes Debtor's true motivation was to have the farmland sold to a buyer under terms he preferred—at the expense of his creditors—and contrary to the Sale Order the Court had entered after much litigation.

There was thus no legal or factual basis for the Debtor seeking relief under Rule 60(b). The withdrawal of the Motion did not totally cure or negate the bad faith filing. It only reduced the need for a hearing. Farm Services had already filed its resistance. The fees with it were incurred. The Court finds that the Debtor acted in bad faith by filing his Rule 60(b) Motion to Vacate.

### C. Amount of Fees Awarded as Sanctions

One of the purposes of sanctions is to make the moving party whole by awarding attorney's fees and other costs incurred as a result of the actor's bad faith conduct. Grand St. Realty, LLC v. McCord, 2005 U.S. Dist. LEXIS 45314, at *14, 22 (E.D.N.Y. Sept. 30, 2005) (citing Chambers, 501 U.S. at 45–46)). The Court will exercise its discretion under 11 U.S.C. § 105(a) and employ this sanction here. However, an award for attorneys' fees must be reasonable and directly attributable to and incurred in defense of the sanctionable conduct. In re Green, 422 B.R. 469, 477 (Bankr. S.D.N.Y. 2010). Farm Credit has requested over $16,000 in attorneys' fees. The Court finds this amount is not reasonable to award for the resistance to a frivolous motion that was eventually withdrawn. The Court finds that a fee award of $3,000 is more than sufficient to compensate Farm Credit for its resistance to a frivolous motion unsupported by fact or color of law.

## CONCLUSION

Farm Credit's Motion for Sanctions against the Debtor is **GRANTED** upon the terms set forth herein:

**IT IS HEREBY ORDERED** that Debtor shall pay $3,000 in attorneys' fees incurred by Farm Credit in connection with resisting his Rule 60(b) Motion to Vacate.

Dated and Entered:

September 30, 2021

THAD J. COLLINS,
CHIEF BANKRUTPCY JUDGE